UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80022-CANNON/REINHART

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

JOHN PAUL GOSNEY, JR.,

    *Defendant.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . /

**GOSNEY'S RESPONSE TO UNITED STATES' MOTION
FOR DISCOVERY PROTOCOL GOVERNING DISCLOSURE
OF MATERIAL SUBJECT TO CLAIMS OF PRIVILEGE**

On April 8, 2022, the government filed United States' Partially Opposed Motion for Discovery Protocol Governing Disclosure of Material Subject to Claims of Privilege. DE#177. Through its execution of numerous search warrants, the government obtained physical and electronic evidence, including (1) emails from Gosney's business email account for john@ojpinc.com, (2) other electronic evidence from laptop computers associated with Gosney, and (3) "eleven banker's boxes of documents" seized from 1200 North Federal Highway, Suite 417, Boca Raton, FL, where it is alleged that Gosney and others committed the charged health care fraud offenses. DE#177:3. It was anticipated that the evidence in the government's possession would include privileged communications between Gosney and lawyers that predated the government's receipt of the documents and

other discovery materials in the government's possession. *See* DE#177:4 ("The Government received information prior to filing the Premises Search Warrants and the Email Search Warrant that ["Potentially Protected Material" or "PPM"] potentially may be present, and for this reason included detailed search procedures for handling PPM in the Warrant applications").

The government attached a proposed order to its motion for discovery protocol, which sets forth a detailed protocol for reviewing the discovery material in its possession that might be privileged. DE#177, Ex. A. The government noted a general objection from Gosney to the proposed protocol order. DE#177:5.

On April 1, 2022, Gosney's counsel sent an email to the Filter Team, outlining Gosney's position on the proposed protocol order:

> We object generally to filter teams comprised of government attorneys. At a minimum, we request the following modifications to the proposed protocol order:
>
> - Add the following language: "The Filter Team shall not share a first-level supervisor with anyone on the investigative/prosecution team (the "Prosecution Team"). Any supervisor involved in the filter team review shall be walled off from the underlying investigation."
> - Remove the following clause: "<u>Failure to Comply</u>: If the ostensible holder of the potential privilege(s) or protection(s) fails to (i) provide to the Filter Team and Co-Defendant(s) a privilege log that complies with Subparagraph (b) above, or (ii) meet and confer in accordance with Subparagraph (f) below, the Court may determine

> that such inactions constitute waiver of any privilege(s) and/or protection(s) over the Potentially Protected Material."
> - Allow us 30 days to review any material the Filter Team deems as non-PPM before release to the Prosecution Team

The Filter Team agreed to modify its proposed discovery protocol to include the restriction that the Filter Team may not share a first-level supervisor with the Prosecution Team, but not the others.

As set forth more fully below, Gosney objects to the government's proposed protocol order and urges this Court to modify the proposed discovery protocol to more sufficiently protect Gosney's confidential attorney-client materials.

## **MEMORANDUM**

As to (1) emails from Gosney's business email account and (2) other electronic and physical evidence, including records from Gosney's electronic devices, Gosney objects insofar as:

A. The protocol allows the government "Filter Team" to review the documents in its possession and make an initial determination whether those documents are "Potentially Protected Material" ("PPM") ("discovery material that is potentially protected from disclosure by the attorney-client privilege, work product doctrine, or any other legally recognized privilege or protection")

without *any* input from Gosney's legal counsel. DE#177, Ex. A at pg. 1 ¶ 3 & n. 1.

B. Upon any determination that the documents are not Potentially Protected Material, the Filter Team will then release them to the Prosecution Team and Defendants. DE#177, Ex. A at pg. 2 ¶ 4. Thus, there is no judicial oversight of this process or notice to Gosney or opportunity for him to object.

C. The Filter Team attorney is DOJ Trial Attorney Timothy J. Coley. DE#177:1 n. 1. Mr. Coley asserts: "The Filter Team attorney is assigned to the U.S. Department of Justice, Criminal Division, Fraud Section's Special Matters Unit and has a separate reporting and supervisory chain from the Prosecution Team in this case." *Id.* At the end of its pleading, Mr. Coley's signature block, reflecting that he is part of the "United States Department of Justice, Criminal Division, Fraud Section," appears directly under the name "Joseph Beemsterboer, Acting Chief Criminal Division, Fraud Section, U.S. Department of Justice." DE#177:11. Mr. Beemsterboer's name and position are also in the signature block of recent pleadings filed by the prosecutorial team in this case. *See* DE##180:1, 185:14.

In place of the filter protocol proposed by the government, Gosney urges this Court to adopt a protocol similar to the one recently approved by the Eleventh

Circuit Court of Appeals (with exceptions noted, *see* footnotes 4 and 5, *infra*). *See In re: Sealed Search Warrant and Application for Warrant by Telephone or Other Reliable Electronic Means* ("*Korf*"), 11 F.4th 1235 (11th Cir. 2021).[1] There, the Eleventh Circuit approved a "modified filter-team protocol" adopted by Magistrate Judge John O'Sullivan (and approved by the district court judge) based on Judge O'Sullivan's concerns that an "original filter-team protocol" (that was established by the magistrate judge who issued a search warrant for voluminous electronic and paper documents to be seized from a business suite containing an office of a private attorney) did not provide sufficient protection for potentially privileged materials that were uncovered in the search. *Korf*, 11 F.4th at 1242-43. The "modified filter-team protocol" required the following:

> a. The government shall process the items and provide them to the movants, on a rolling basis, so that the movants may perform the initial privilege review. Within **forty-five (45) days of receipt** of these items, the movants shall release all non-privileged items to the government's investigative/prosecution team and provide a privilege log to the government's filter team for all items for which they assert a privilege.

---

[1] Undersigned counsel for Gosney was counsel of record in the district court and Eleventh Circuit for the intervenor privilege holders in *Korf* and is now co-counsel in the Supreme Court for the petitioners in *Korf et al., Petitioners, v. United States, Respondent.*, 2022 WL 1190230 (U.S.).

   b. The government's filter team shall be comprised of attorneys and staff from outside the United States Attorney's Office for the Northern District of Ohio's Cleveland branch office. The filter team shall not share a first level supervisor with anyone on the investigative/prosecution team. Any supervisor involved in the filter team review shall be walled off from the underlying investigation.²

   c. The government's filter team is permitted to review any items listed on the movants' privilege log and may challenge any of the movants' privilege designations.³

   d. The government's filter team and the movants' counsel shall confer and attempt to reach a resolution as to those items challenged by the government's filter team.

   e. If the parties are unable to reach a resolution, the parties shall file a joint notice with the Court. Either the Court or a special master shall rule on the parties' privilege disputes.

---

² Gosney objects insofar as both the Filter Team attorney and prosecution team appear to be supervised by the Acting Chief, U.S. DOJ, Criminal Division, Fraud Section, under whose name pleadings are being filed in this court by both the Filter Team (*e.g.*, DE#177:11) and Prosecution Team (*e.g.*, DE##180:1, 185:14).

³ With regard to Gosney's assertedly-privileged materials, Gosney objects to the use of *any* filter team consisting of attorneys or representatives of the DOJ, the same DOJ that is prosecuting him. He maintains that government agents can *never* review documents designated by their possessors as attorney-client or work product privileged until after a court has rejected the privilege assertion. *See United States v. Zolin*, 491 U.S. 554, 571 (1989) ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."). He recognizes that in *Korf* the Eleventh Circuit ruled otherwise on this issue. He maintains this objection to preserve the issue, should the Supreme Court adopt his view in *Korf* or some other case.

> f. The filter team will provide to the investigative team only those items for which the parties agree or for which the privilege has been overruled.

*Id.* at 1243.

Significant to the review team protocol proposed by the government in this case, the Eleventh Circuit approved modifications made to an original review team protocol that was incorporated into the search warrant. *Korf*, 11 F.4th at 1238-41. The original protocol allowed a government filter team, separate from the investigative team, to review documents. *Id.* at 1240. The filter team would provide any documents not "to or from an attorney" to the investigative team for use in its investigation. If it determined that any such communications were not privileged (because third parties were included or it believed the crime-fraud exception applied), the filter team would then have to secure court approval before providing the document to the investigative team. *Id.*

In response to the search targets' objections and his concerns for the sanctity of any privileged documents, the magistrate judge modified the protocol. *Id.* at 1240-44. To address the possible inadvertent disclosure of privileged materials to the investigation and Prosecution Team, both with "to/from attorney" communications that the filter team determined (without judicial oversight) were not privileged, and privileged communications that might not have been to or from

7

an attorney, the magistrate judge decided to allow the Intervenors to conduct the initial privilege review. *Id.* at 1242-43. He also specified that the government's filter review team had to be composed of attorneys and staff outside of the investigating team's office. *Id.* Additionally, though the filter team could review any item on the Intervenors' privilege log to formulate a challenge to the privilege assertion, the investigation and prosecution team would be prohibited from receiving any items on the log unless the parties agreed or the court or a special master overruled the privilege. *Id.* Accordingly, the magistrate judge adopted the modified filter team protocol set forth above. *Id.* at 1243. Along the way, the magistrate judge rejected Intervenors' objection to permitting a government filter team, even one "walled off" from the prosecutorial team, to review documents seized through the execution of a search warrant, that are designated as privileged by the targets of the search, before determination of the validity of the asserted privilege by a magistrate judge.

The district court and Eleventh Circuit approved the modified filter team protocol, even insofar as it allowed the government-led filter team to see the assertedly-privileged documents before a privilege ruling. The court rejected the intervenors' argument that a government filter review team could *never* review such documents before a magistrate judge considered and rejected the search targets' assertion of privilege.

8

But in distinguishing the two cases the Intervenors primarily relied upon to support their arguments, *In re Grand Jury Subpoenas 04-124-03 and 04-124-05* (*"Winget"*), 454 F.3d 511 (6th Cir. 2006), and *In re: Search Warrant Issued June 13, 2019* ("*Baltimore Law Firm*"), 942 F.3d 159 (4th Cir. 2019), the court made clear the salient protections contained in the modified filter team protocol (that are not present in the Filter Team's proposed protocol) that saved it from possible invalidation. *Korf*, 11 F.4th at 1249-51.

In *Winget*, the district court permitted a government filter team protocol for documents obtained through a grand jury subpoena, some of which the plaintiffs claimed were privileged. 454 F.3d at 512. The procedure allowed the filter team to determine whether particular documents were, indeed, privileged. Only those that the filter team determined were definitely or possibly privileged were submitted to the court for privilege review. *Id.* at 515, 518 n. 5.

The Sixth Circuit held that the protocol failed to adequately protect the plaintiffs' claims of privilege because, *inter alia*, without the initial intervention of the privilege holders to identify the documents which they claimed were privileged, and a reviewing judge to approve any government assertion that the document was not privileged, privileged documents may be missed and mistakenly (but improperly) passed on to the investigative team. *Id.* at 523. The *Korf* court noted

9

that the modified protocol adopted by the district court did not carry this vice because the Intervenors were the ones to identify privileged documents in the first instance (and any contrary argument would be resolved by a magistrate judge before the document could be passed on to the investigative team). *Korf*, 11 F.4th at 1250.

*Baltimore Law Firm* involved documents seized during the execution of a search warrant at a law firm. 942 F.3d at 164-67. The issuing judge, with *ex parte* participation of the government, set forth a review protocol that allowed the government's filter team to initially determine what was privileged and what was not. *Id.* at 166. As in *Winget*, communications that were determined not to be privileged could be forwarded to the investigative team; those privileged or potentially privileged could be released to the investigative team only by agreement of the parties or a determination by the court. *Id.* The district court ultimately modified the protocol to require the filter team to forward materials it deemed nonprivileged to the plaintiff or court for approval before providing them to the investigative team. *Id.* at 170.

The Fourth Circuit held that any protocol should have been determined in an adversarial proceeding with participation of the search targets. *Id.* at 178-79. It further held that the protocol was flawed because it improperly assigned judicial functions to the executive branch – the government filter team – in determining, in

the first place, the existence of privilege. *Id.* at 176. The *Korf* court explained that the concerns raised in *Baltimore Law Firm* were not extant with the modified protocol before it. *Korf*, 11 F.4th at 1250-51. It noted that the protocol it examined was established following an adversarial hearing at which the defendants' concerns were considered. Further, it observed that the improper delegation concern was eliminated because the Intervenors had the first opportunity to identify privileged materials and before any could be turned over to the government's investigative team, the Intervenors or the court would have to approve.

The protocol proposed by the Filter Team in this case does not address the concerns that the *Korf* court indicated saved the modified review team protocol from invalidation. Most significantly, it improperly delegates the initial task of determining privilege to the government. DE#177, Ex. A at pg. 1 ¶ 3 . Then, without any judicial involvement whatsoever, it authorizes the filter review team to release material it determines is not PPM to the Prosecution Team for use in its investigation and prosecution. DE#177, Ex. A at pg. 2 ¶ 4. All this occurs before Gosney is able to examine the material and assert any privilege he believes applies. This is particularly concerning given that in-house counsel kept an office at the premises where the search warrant was executed. *See* DE#177: 3 n.1 ("During the

11

execution of the Warrants, the Government was informed that the premises contained an office purportedly belonging to Attorney Keith Fousek.").

Additionally, unlike the substantial separation between the filter team and investigative team (based out of offices in different locations and not sharing a first level supervisor, *Korf*, 11 F.4th at 1243), the pleadings filed in the instant case suggest that Acting DOJ Fraud Section Chief presides over *both* the Prosecution Team and the Filter Team.

Mr. Gosney objects to the deployment of any filter team involving DOJ or other government agents. *See Zolin*, 491 U.S. at 571 ("[A] district court would be mistaken if it reviewed documents *in camera* solely because the government begged it to do so, with no reason to suspect crime or fraud."). If, as *Zolin* holds, the risk to privilege posed by *judicial* access to privilege material is sufficiently high to bar courts from immediate document access even for purposes of adjudicating privilege issues, then the risk to the privilege is even more problematic when an *adversary* (even a so-called "filter team") obtains immediate access to an opponent's potentially privileged documents, even if to mount privilege challenges. It is unseemly in appearance and presents too great a risk for even inadvertent violations of Gosney's attorney-client and work product privileges.

In all events, the attorney-client privilege "serves much broader purposes" than just the assurance that the communications will not be used as evidence against the privilege holder by a litigation adversary. The privilege guarantees to the client confidentiality regarding "matters which the client would not wish divulged"—even after death—regardless of what use—even if none—would be made of the communication. *Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998) ("[T]he attorney-client privilege survives the death of the client."). But at a minimum, any protocol involving such a review team should comport with the minimum requirements highlighted in *Korf*.[4]

Wherefore, Defendant Gosney respectfully requests this Court to establish a protocol similar to the one approved in *Korf* that (a) allows Mr. Gosney, in the first instance, to review the materials in the government's possession and identify those for which he asserts a privilege, (b) ensures that unless a judge overrules Gosney's assertion of privilege, those privileged materials can never be disclosed to or shared

---

[4] *Korf* made clear that it was not approving government staffed filter teams generally, and certainly not ones, like the one approved by this court, that differ from, and provide less protection than, the one *Korf* considered: "We do not prejudge other filter protocols that are not before us. Rather, we evaluate only the Modified Filter-Team Protocol and simply conclude that, under the circumstances here, that Protocol suffices, even under frameworks of analysis that other Circuits have used to invalidate other protocols." *Korf*, 11 F.4th at 1251 n. 10.

in any way with the government's prosecutorial team, and (c) requires that if a Filter Team walled off from the Prosecutorial Team is permitted to review the privileged materials, that Filter Team must be composed of members from a different, U.S. DOJ, Criminal Division section that is not overseen by the same Chief (or Acting Chief) as the Prosecutorial Team, or provide such other and further relief that protects Gosney from any violation of his attorney-client, work-product, joint defense, or other legally recognized privilege.

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

/s/   Howard Srebnick
**HOWARD SREBNICK, ESQ.**
Florida Bar No. 919063
E-mail: HSrebnick@RoyBlack.com
**ALYSSA SILVAGGI, ESQ.**
Florida Bar No. 114129
E-mail: ASilvaggi@RoyBlack.com

*Temporary Appearances for John Paul Gosney, Jr.*