UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-80022-CR-CANNON

**UNITED STATES OF AMERICA**,

 Plaintiff,
v.

**JOHN PAUL GOSNEY, JR.**,

 Defendant.
_____/

## ORDER ON NOTICE OF INTENT [ECF No. 248] AND DENYING MOTION TO VACATE RESTRAINING ORDER [ECF No. 172]

**THIS CAUSE** comes before the Court upon Defendant John Paul Gosney, Jr.'s Notice of Intent (the "Notice") [ECF No. 248], filed on May 20, 2022. The Notice relates to Gosney's Motion to Vacate the Ex Parte Restraining Order [ECF No. 172], filed on April 8, 2022. Gosney seeks a pre-trial, post-restraint hearing on whether funds on deposit at a Valley Bank account ending in X5348 (also referred to as "Metropolis Account 2") are properly subject to forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), (a)(7), and 981(a)(1)(C). As of February 25, 2022, Metropolis Account 2 had funds in the amount of approximately $818,200, and there is no dispute that Gosney has signatory authority over that account [ECF No. 81 ¶ 33]. The Court previously restrained these funds via an Order Granting the Government's Post-Indictment, Ex Parte Application, which Gosney challenges [ECF No. 80 (Application and Motion); ECF No. 81 (Declaration of FBI Special Agent in Support of Application); ECF No. 103 (Protective Order for Asset Subject to Forfeiture); ECF Nos. 172, 248].

Following a complete review of the record and the applicable law, including the factors under *Barker v. Wingo*, 407 U.S. 514 (1972), as applied to criminal asset restraints, *see United States v. Bissell*, 866 F.2d 1343, 1353 (11th Cir. 1989); *United States v. Kaley*, 579 F.3d 1246, 1257 (11th Cir. 2009), the Court determines that due process does not require a pre-trial hearing to evaluate the traceability of the seized property in this case. Defendant's Motion for a hearing to challenge traceability [ECF No. 172] is therefore **DENIED**. For purposes of this Order, and as further explained below, the Court assumes that Gosney has sufficiently demonstrated financial need based on the contents of his ex parte submission [ECF No. 238].

## RELEVANT FACTS AND PROCEDURAL HISTORY

On February 24, 2022, a federal grand jury in the Southern District of Florida returned a multi-count indictment charging John Paul Gosney, Jr. and nine others with various offenses related to a complex health care fraud, kickback, and money laundering scheme [ECF No. 23]. The scheme is alleged to have consisted of, among other things, paying and receiving kickbacks and bribes in exchange for medical referrals, falsifying Medicare enrollment forms to conceal ownership information, submitting false and fraudulent claims to Medicare, and diverting reimbursements for personal gain [ECF No. 23 pp. 13–14, ¶ 3].

Gosney is charged in 11 counts of the 22-count indictment: conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); health care fraud, in violation of 18 U.S.C. § 1347 (Counts 4–6); conspiracy to pay and receive health care kickbacks, in violation of 18 U.S.C. § 371 (Count 7); receipt of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a–7b(b)(1)(A) (Counts 10 and 13); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 14); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 15, 17, 19) [ECF No. 23].

CASE NO. 22-80022-CR-CANNON

As relevant here, the indictment identifies Gosney as the signatory for a Wells Fargo account ending in X2130 ("Metropolis Account 1") and a Valley National Bank account ending in X5348 ("Metropolis Account 2") [ECF No. 23 p. 11, ¶ 41]. It then charges Gosney in Count 19 with money laundering for knowingly transferring from Metropolis Account 1 to Metropolis Account 2 $2,000,000 in proceeds from specified unlawful activities—namely, conspiracy to commit health care fraud and wire fraud, health care fraud, and receipt of kickbacks in connection with a federal health care program [ECF No. 23 pp. 28–29 (Count 19)]. The indictment then sets forth a nonexhaustive list of property subject to forfeiture as a result of the alleged offenses [ECF No. 23 p. 31, ¶ 5]. Metropolis Account 2 is not included on that list [*see* ECF No. 23 pp. 31–32, ¶ 5].

On March 2, 2022, the Government submitted an ex parte application for a post-indictment protective order pursuant to 21 U.S.C. § 853(e), seeking to restrain and enjoin all funds in Metropolis Account 2 [ECF No. 80]. In support of its application, the Government submitted the declaration of FBI Special Agent Marcus Williams, who details a series of wire transfers into Metropolis Account 1 between October 2020 and February 2021, totaling $1,954,100 in allegedly fraudulent proceeds, and then explains that, on July 14, 2021, approximately $2,000,000 was transferred from Metropolis Account 1 to Metropolis Account 2 [ECF No. 81 ¶¶ 25–34]. That transfer on July 14, 2021 forms the basis of the money laundering offense in Count 19 of the indictment [ECF No. 23 pp. 28–29]. Based on that financial analysis and the allegations in the indictment, Williams asserts that there is probable cause to believe that the funds in Metropolis Account 2 ($818,200 as of February 25, 2022) constitute or derive from proceeds traceable to the underlying offenses and thus are subject to forfeiture pursuant to 18 U.S.C. §§ 982(a)(1), (a)(7), and 981(a)(1)(C). [ECF No. 81 ¶ 35]. The Court subsequently entered a Protective Order for Asset

Subject to Forfeiture, restraining the funds in the Metropolis Account 2 [ECF No. 103].

In support of his Motion to Vacate, Gosney ask the Court to vacate the restraining order immediately, or, in the alternative, to hold a hearing on the traceability of the restrained funds to the alleged crimes for purposes of reconsidering the restraining order [ECF No. 172]. Gosney argues that the Supreme Court's decision in *Kaley v. United States*, 571 U.S. 320 (2014)—which held that a grand jury's determination of probable cause as to whether a defendant committed a charged offense cannot be second-guessed at a pretrial, post-restraint hearing—should be overruled, and that, at minimum, defendants in his position should not be required to publicly establish financial need to merit a post-restraint hearing [ECF No. 172 pp. 11–20; ECF No. 205 pp. 4–6]. As to why he believes he warrants a traceability hearing on the merits, Gosney presents a series of related arguments about why he considers the allegations in the indictment—and the Government's evidence in support of those allegations—inconsistent with the fraud scheme as charged [ECF No. 172 pp. 4–7; ECF No. 205 pp. 1–4 (arguing, for example, that certain allegations in the indictment do not give rise to a scheme to defraud under *United States v. Takhalov*, 827 F.3d 1307 (11th Cir.), as revised (Oct. 3, 2016), *opinion modified on denial of reh'g*, 838 F.3d 1168 (11th Cir. 2016); that evidence presented by the government during a preliminary hearing for co-defendant Michael Rozenberg supports that view [relying on ECF No. 170]; and that the Government's evidence of fraudulent billings establishes, at most, some irregularity with a "handful" of Medicare claims but does not support the existence of the massive fraudulent scheme as described in the indictment)].

The Court, bound by Supreme Court and Eleventh Circuit authority, denied Gosney's request to vacate the restraining order outright [ECF No. 217]. Out of an abundance of caution, however, the Court granted Gosney permission to attempt to make the prerequisite showing of

financial need on an ex parte basis [ECF No. 217]. Gosney subsequently requested and received an extension of time to file the financial information [ECF Nos. 222–23]. On May 12, 2022, as permitted, Gosney filed his ex parte financial information in an effort to satisfy the preliminary showing of financial need [ECF No. 238]. He asked the Court not to share the information with the Government, and he further indicated that he would not testify about his finances at a future adversarial hearing [ECF No. 238; *see also* ECF No. 236]. The Court thereafter requested clarification from Gosney on whether he intended to meet his ultimate burden to prove at an adversarial hearing that he needs the restrained assets to hire his counsel of choice [ECF No. 240 (relying on *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998), and *United States v. Farmer*, 274 F.3d 800, 846 (4th Cir. 2001))]. Following another extension [ECF Nos. 244–45], Gosney filed the instant Notice of Intent [ECF No. 248]. In the Notice, Gosney asserts that he is the only person with sufficient knowledge about his finances, and that he is unwilling to testify in open court unless the court grants him use immunity [ECF. No. 248 (citing *Simmons v. United States*, 390 U.S. 377, 390 (1968))]. He also reiterates his position that the Government's evidence of revenue from improper Medicare claims is de minimis [ECF No. 248 p. 3]. And he does not clearly acknowledge whether he is willing to testify if the Court were to grant his request for use immunity [ECF No. 248].

## DISCUSSION

As noted, for purposes of this Order, the Court assumes that Gosney's ex parte showing of financial need [ECF No. 238] satisfies the preliminary showing requirement for a pre-trial, post-restraint hearing on traceability. *See Kaley*, 579 F.3d at 1252 (referencing a defendant's financial need to afford counsel of choice as a condition precedent to consideration of the *Barker* factors); *United States v. Farmer*, 274 F.3d 800, 846 (4th Cir. 2001); *United States v. Jones*, 160 F.3d 641,

647 (10th Cir. 1998). The Court deems this approach the most prudent under the circumstances presented; Gosney has provided at least a preliminary showing of financial need, albeit on an ex parte basis; there is limited authority on the specific procedures a court should employ to determine a defendant's financial need in this context; and Gosney apparently now insists on the protection of use immunity to meet his burden to show financial need at an adversarial hearing, a request whose legal footing is unsettled, at best.[1]

Accepting that assumption of financial need, the Court proceeds to conduct an evaluation

---

[1] "Use immunity" prohibits the government from using a witness's statements or testimony as a basis for any prosecution of that witness. It has a closely related offshoot, "derivative immunity," which prohibits the government from using evidence derived from the testimony of the witness against the same. Discussions of immunity frequently arise in the context of compelled testimony. *See Kastigar v. United States*, 406 U.S. 441, 449 (1972); *United States v. Dudden*, 65 F.3d 1461, 1467 (9th Cir. 1995). In this case, Gosney argues that he should be able to testify about his financial need as relates to exercising his Sixth Amendment right to counsel of choice without having to waive his Fifth Amendment privilege against self-incrimination [ECF No. 248]. Accordingly, Gosney proposes that the Court apply use immunity to any such testimony, citing *Simmons v. United States*, 390 U.S. 377, 390 (1968). In that case, the Supreme Court considered the admissibility of a defendant's testimony to establish a possessory interest in support of a motion to suppress evidence, which, by its nature, posed a significant risk of self-incrimination. *Id.* The Supreme Court held that, where a defendant is in the "intolerable" situation of having to choose between a valid Fourth Amendment claim and the Fifth Amendment privilege against self-incrimination, courts should remedy the situation by applying use immunity to the relevant testimony. *Id.* The notion that having to choose between two constitutional rights constitutes an "intolerable" situation is what courts refer to as the "*Simmons* principle," though the scope and validity of the principle is unclear. Since deciding *Simmons*, the Supreme Court has characterized the rationale underlying the principle as "open to question," casting doubt on whether it may properly be applied to the context of conflicts between the Fifth and Sixth Amendments, *McGautha v. California*, 402 U.S. 183, 212 (1971), *reh'g granted, judgment vacated sub nom. Crampton v. Ohio*, 408 U.S. 941 (1972), as some lower courts have done, *see United States v. Kahan*, 415 U.S. 239, 243 (1974); *United States v. Branker*, 418 F.2d 378, 381 (2d Cir. 1969); *United States v. Anderson*, 567 F.2d 839, 841 (8th Cir. 1977). For its part, the Eleventh Circuit has declined to adopt a broad reading of *Simmons* in light of the Supreme Court's "considerabl[e] narrowi[ing]" of the principle in *McGautha* and *Kahan*. *In re Fed. Grand Jury Proc. (FGJ 91-9), Cohen*, 975 F.2d 1488, 1493 (11th Cir. 1992). Although Gosney's requested extension of *Simmons* and related demand for use immunity seems tenuous to the Court in this context, the Court finds it unnecessary to resolve that unsettled question because due process does not require a pre-trial traceability hearing in this case.

of the four *Barker* factors and concludes, for the reasons stated below, that due process does not require a pre-trial, post-restraint hearing on traceability in this case. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (establishing a four-factor test to determine whether a delay has deprived a defendant of any rights necessitating a hearing); *United States v. Bissell*, 866 F.2d 1343, 1353 (11th Cir. 1989) (applying *Barker* to the context of criminal asset restraints); *Kaley*, 579 F.3d at 1257 (recognizing the continued validity of *Barker* and *Bissell* in the asset restraint context).

### The *Barker* Test

To determine whether a pre-trial hearing is warranted under the *Barker* test, courts must consider: (1) the length of delay until the issue would otherwise be resolved; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. The Court discusses each factor in turn.

### I. Length of Delay

In the context of asset restraints, the relevant length of delay is the amount of time between when the restraint is imposed and when the restraint would be reconsidered and resolved (i.e., trial). Here, the subject asset restraint was imposed on March 7, 2022 [ECF No. 103], and trial is set for January 2023 [ECF No. 231 (setting trial firmly for the two-week trial period beginning on January 17, 2023, noting no further continuances)]. Thus, the relevant length of delay in this case is between ten and eleven months. A delay of that length, although not insignificant, is not so substantial as to clearly favor a pre-trial hearing. *See Bissell*, 866 F.2d at 1353 (characterizing an eight-month delay as "not significant"); *see also United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 565 (1983) (finding a delay of approximately eighteen months to be significant but outweighed by other factors). This factor thus is either neutral or marginally weighs in Gosney's favor.

## II. Reason for the Delay

The indictment in this case brings a total of twenty-two (22) charges against ten (10) Defendants in connection with a multimillion-dollar health care fraud conspiracy, including charges of money laundering that implicate numerous entities and bank accounts [*see* ECF No. 23].[2] As Gosney has acknowledged, discovery is "massive," involving hundreds of thousands of documents and necessitating a detailed and developed discovery protocol for use by a filter team [ECF No. 238 p. 2; *see also* ECF No. 146 (joint request for designation of case as complex under 18 U.S.C. § 3161(h)(7)(B)(ii)); ECF Nos. 220, 224]. Under these circumstances, further explained by the Court in its Order Resetting Trial [ECF No. 231], the ten-month delay is entirely reasonable in light of the complexities of this case, the extremely voluminous discovery, and the expressed need for adequate preparation on both sides. This factor is neutral. *See generally United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009).

## III. Assertion of Right

Gosney filed his motion to vacate the restraining order on April 8, 2022—one month after the restraining order was entered [*see* ECF Nos. 103, 172]. This timely assertion weighs in Gosney's favor.

## IV. Prejudice

Lastly, the Court conducts a "more searching exposition and calculus" of the fourth factor: measuring the prejudice inflicted upon Gosney by the delay compared to the Government's interest in restraining the subject property without a pre-trial hearing. *See Kaley*, 579 F.3d at 1258 (instructing district courts to pay special attention to this fourth factor). In all asset forfeiture cases, the fundamental risk is that the Government might restrain untainted assets. That risk is related in

---

[2] One defendant, Galina Rozenberg, has since pled guilty [ECF Nos. 190–192].

8

this case to Gosney's claim that he needs the restrained assets to exercise his Sixth Amendment right to counsel of choice [ECF No. 172].  The Court is mindful of the risk and constitutional principles implicated here but does not find Gosney's arguments sufficient to justify a hearing under the rubric set by the Supreme Court in *Kaley v. United States*, 571 U.S. 320 (2014).

In *Kaley*, the Supreme Court drew a distinction between (1) the grand jury's determination of probable cause to believe a defendant committed a crime and (2) the grand jury's determination that the assets subject to forfeiture are traceable to the charged crime.  571 U.S. at 333.  In doing so, the Supreme Court made clear that only the latter determination—which concerns a technical matter removed from the grand jury's core competence and function—may be subject to second-guessing prior to trial.  *Id.* at 331 n.9.  Conversely, the former determination by the grand jury—that probable cause exists to believe a defendant perpetrated the offenses alleged based on the factual allegations supporting the grand jury's probable cause determination—is "conclusive" at this stage, i.e., not subject to "any review, oversight, or second-guessing" pending resolution of the case.  *Id.* at 328–29.

In accordance with *Kaley*, therefore, the following probable cause determination by the grand jury in this case is conclusive: Gosney committed money laundering by transferring approximately $2,000,000 from Metropolis Account 1 to the subject Metropolis Account 2—money that Gosney knew was derived criminally from specified unlawful activity, i.e., conspiracy to commit health care fraud and wire fraud, health care fraud, and receipt of kickbacks in connection with a federal health care program [ECF No. 23 pp. 28–29].  Also conclusive is the grand jury's determination that Gosney conducted that financial transaction "knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control" of those proceeds as specified unlawful activity [ECF No.

23 pp. 28–29]. All of this matters because Gosney's challenge to the asset restraint in this case amounts essentially to a frontal assault on the reliability and competence of the factual allegations supporting the Medicare fraud as alleged in the indictment [*see* ECF No. 172 pp. 4–7; ECF No. 205 p. 2]. Gosney relies heavily, for example, on what he considers to be revelations about the absence of fraud as drawn from the testimony of FBI Agent Frank at co-defendant Michael Rozenberg's preliminary hearing [ECF No. 172 pp. 4–7]. According to Gosney, Agent Frank's testimony establishes that roughly 3,700 medical tests at issue in at least part of the alleged fraud were properly "authorized by different treating physicians exercising their independent medical judgment regarding medical necessity" [ECF No. 172 p. 5]. Yet the indictment specifically and repeatedly alleges that Defendants, including Gosney, conspired to and did submit millions of dollars in false and fraudulent claims for medically unnecessary tests [ECF No. 23]. Gosney further argues, again citing to Agent Frank's testimony, that "neither doctors nor patients were paid kickbacks or otherwise unlawfully induced to order or receive unnecessary [medical] tests" [ECF No. 172 p. 5]. Yet again the indictment alleges otherwise, claiming that the conspiracy involved kickback and bribe arrangements with health care providers, companies, and laboratories [ECF No. 23 pp. 14, 21]. In the same vein, Gosney urges that any lies allegedly made by Defendants to induce others to perform these tests cannot form the basis of a "scheme to defraud" under the Eleventh Circuit's decision in *Takhalov*, 827 F.3d at 1313, but that too is inextricably premised upon a challenge to the reliability and foundation of the charged offenses for which the grand jury found probable cause [ECF No. 172 p. 6]. Finally, in Reply, Gosney again focuses on the substance and extent of the fraud, arguing that any revenue derived from just a few irregular Medicare billings represents a "small fraction" of the revenue from the 3,700 otherwise proper tests [ECF No. 205 p. 3].

All told, other than referencing the issue of whether the subject asset is "traceable to the crimes charged" in passing [ECF No. 172 p. 8; ECF No. 205 pp. 2, 4], Gosney's arguments on the merits all reduce to a claim that neither he nor his co-defendants committed the charged crimes or obtained any significant amount of money from improper Medicare claims. That determination, however, falls within the sole province of the grand jury under the Supreme Court's binding decision in *Kaley*. As a result, Gosney cannot show prejudice from not having an opportunity, at a pre-trial hearing, to challenge the underlying fraud scheme generally or the money laundering offense in Count 19 specifically—a crime built directly on the allegation that Gosney knowingly transferred $2,000,000 in criminally derived funds to the Metropolis Account 2 (whose funds are now seized) [ECF No. 188 pp. 4–5]. Put another way, Gosney's arguments in favor of a hearing necessarily depend upon a challenge to the reliability and competence of the underlying allegations of a fraudulent scheme in the indictment, but *Kaley* disallows that type of "second-guessing" at this stage [*see* ECF No. 188 pp. 6–7]. Gosney has not shown prejudice by the Court's decision to refrain from holding a hearing.

On the other side of the equation, the Government has a substantial interest in continuing to restrain Metropolis Account 2 without any pre-trial hearing [ECF No. 188 p. 5]. *See Kaley*, 571 U.S. at 321. As the Supreme Court has recognized, "there is a strong governmental interest in obtaining full recovery of all forfeitable assets," *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 618 (1989), and requiring the Government to respond prematurely to Defendant's challenges and to rehash the evidence in support of the alleged crimes at a pre-trial "mini-trial" is both legally unwarranted under *Kaley* and would contravene important government interests. *See Kaley*, 571 U.S. at 335 (discussing government interests in freezing potentially forfeitable assets without an evidentiary hearing, including the time and resources expended at such a hearing).

For all of these reasons, the fourth and most searching *Barker* factor weighs decidedly in favor of the Government.

## CONCLUSION

In applying the *Barker* test to this case, the Court finds that a pre-trial, post-restraint hearing on the traceability of the restrained funds to the charged offenses is unwarranted. The first two *Barker* factors—the length and cause of the contemplated delay—do not weigh in favor of a pre-trial hearing in any significant way. The only factor that does is Gosney's timely assertion of his right, and that factor is outweighed significantly by the output of the prejudice calculus under the binding precedent of *Kaley* and in the context of Gosney's challenge.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant John Paul Gosney, Jr.'s Motion to Vacate the Restraining Order [ECF No. 172] is **DENIED**.

2. **Gosney's arraignment, which the Court previously continued pending resolution of this matter [ECF No. 217], shall proceed expeditiously.**

**DONE AND ORDERED** in Chambers in Fort Pierce, Florida this 10th day of June 2022.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record

12