UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80022-CANNON/REINHART

UNITED STATES OF AMERICA,

    v.

JOHN PAUL GOSNEY, JR., et al.
. . . . . . . . . . . . . . . . . . . . . . . . . . . ./

### GOSNEY'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM HIS UNLAWFUL DETENTION AND INCORPORATED MEMORANDUM OF LAW

The Defendant, JOHN PAUL GOSNEY, JR., through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) and the Fourth Amendment to the United States Constitution, moves this Court to suppress all electronic, documentary, and other physical evidence, direct and derivative, resulting from the unlawful seizure of Gosney's person, unlawful search of Gosney's backpack and subsequently unlawful search and seizure of Gosney's personal laptop on July 14, 2021, as well as any and all statements made by Gosney during his unlawful detention. As grounds, Gosney asserts as follows:

### GROUNDS

1. On July 14, 2021, federal agents executing a search warrant at the office of DMC Group Holding, LLC ("the DMC Office" or "the Premises"), detained

1

Gosney in the parking lot behind the multiunit building where the DMC Office is located, without a warrant for his arrest.

2. Later, during the continuing detention of Gosney, federal agents searched Gosney's backpack and seized his personal laptop computer. All evidence derived from this illegal search of Gosney's backpack must be suppressed as "a fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471 (1963).

3. The Search and Seizure Warrant only authorized the search of the DMC Office (Suite 417 of 1200 North Federal Highway, Boca Raton, FL 33432), and probable cause to seize computers and electronic storage included in the search warrant was explicitly limited to those found within the DMC Office. The seizure and subsequent search of Gosney's personal laptop computer was outside the scope of the premises search warrant and therefore unreasonable and violative of the Fourth Amendment of the United States Constitution.

## ITEMS TO BE SUPPRESSED

1. Gosney's personal laptop (Apple MacBook) that was seized from him during an unlawful detention and any other evidence (electronic, documentary, or physical), witness or statement, that was discovered, accessed or derived from, directly or indirectly, the illegal search of this laptop computer.

2.	Any and all statements made by Gosney during his unlawful detention, including but not limited to, any statement regarding the ownership and passwords of computers located at the DMC Office.

## FACTS

On July 14, 2021, approximately 50 federal agents executed a search warrant at the office of DMC Group Holding, LLC, located at 1200 North Federal Highway, Suite 417, Boca Raton, FL 33432 ("the DMC Office" or "the Premises"). DE 170:33 (the government's search of DMC "included 50 agents on site"). 1200 North Federal Highway in Boca Raton, Florida is a multiunit building, and the search warrant only authorized the search of Suite 417, located on the fourth floor of the building. Search Warrant, Attachment A. Attachment A to the search warrant includes a detailed description of Suite 417's location within the office building, a picture of the suite's doors, and a floor plan of the building. Search Warrant, Attachment A.

When federal agents arrived at 1200 North Federal Highway, they encountered Gosney in the parking lot behind the multiunit building on the property. Agents served Gosney with grand jury subpoenas and detained him. Gosney was escorted into the building surrounded by law enforcement officers – agents on each side of him and following behind him to ensure he did not leave the location. Agents escorted Gosney into the building and proceeded to marshal him inside the building's elevator, up four floors, across the fourth-floor corridor and into the DMC

Office that is the subject of the search warrant. While still detained, agents questioned Gosney as to the ownership of computers within the Premises and instructed Gosney to reveal the password to the computer that Gosney identified as his. Gosney acceded to the agents' commands and provided the password for his office computer.

When agents completed their questioning of Gosney, Gosney was escorted by multiple federal agents outside of the DMC Office and into the building's elevator. While inside the elevator, and without Gosney's consent, agents searched Gosney's sealed backpack and located a laptop. Agents then told Gosney that they were seizing his laptop. Gosney advised the agents that the laptop in his backpack was his own, personal laptop and did not belong to DMC. Despite this, agents still seized Gosney's laptop. A subsequent search of the laptop was conducted, revealing materials that the government now intends to use as evidence against Gosney at his trial. During the pendency of the detention, the agents did not permit Gosney to use his cell phone at any time.

## MEMORANDUM OF LAW

### I. GOSNEY WAS UNLAWFULLY DETAINED BY FEDERAL AGENTS

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "A person is seized by

the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement, '*through means intentionally applied.*'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations omitted) (emphasis in original). "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). An individual is seized "within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In order to lawfully detain Gosney, law enforcement must have had "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 29 (1968)). Reasonable suspicion is a totality of the circumstances analysis to determine "whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id*. at 272. The agents did not possess the requisite reasonable suspicion to detain Gosney and search his possessions.[1]

---

[1] In *Michigan v. Summers*, the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S.

The circumstances surrounding Gosney's interaction with federal agents indicate that he was seized. First, the movement of Gosney by the agents from one location to another is a restraint on Gosney's freedom of movement that is sufficient to warrant Fourth Amendment protection. Agents encountered Gosney in the parking lot of a multiunit building that contained a suite that the agents had authorization to search. Agents directed Gosney to enter the building, without his consent. *See, e.g., Swartz v. Insogna*, 704 F.3d 105, 110 (2d Cir. 2013) ("the instruction to reenter the car was a sufficient interference with liberty to constitute a Fourth Amendment seizure."); *United States v. Knox*, 839 F.2d 285 (6th Cir. 1988) (finding defendants were seized within the meaning of the Fourth Amendment when defendants were approached by drug enforcement agents and asked to accompany the agents for questioning); *Brendlin v. California*, 551 U.S. 249, 261–62 (2007); ("what may amount to submission depends on what a person was doing before the

---

692 (1981) This rule was limited by *Bailey v. United States*, 568 U.S. 186, 201 (2013) in that "[a] spatial constraint defined by the immediate vicinity of the premises to be searched is [] required for detentions incident to the execution of a search warrant." Here, there could be no proper detention of Gosney during the execution of the Premises search warrant and thus the officers must have had reasonable suspicion before detaining Gosney. Gosney was not in the "immediate vicinity" of the Premises when he was detained; Gosney was found *outside* of the Premises and taken *inside* the Premises by the officers so they could question Gosney in aid of their investigation. On these facts, the rationale justifying detention during the execution of a search warrant does not apply.

6

show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away.").

Second, when the agents escorted Gosney to and from the Premises, they surrounded Gosney in a way that prevented him from freely moving. *See United States v. Villa-Gonzalez*, 623 F.3d 526, 533 (8th Cir. 2010) (finding a seizure when "[t]he officers in this case positioned themselves so as [to] limit [the defendants'] freedom of movement.").

Third, the presence of multiple law enforcement officers is a factor for the Court to consider in determining whether or not an individual has been seized. *See, e.g., Mendenhall*, U.S. 544 at 554 (citing as an "example[] of [a] circumstances that might indicate a seizure, even where the person did not attempt to leave" the "threatening presence of several officers"). The government's search of the DMC Office "included 50 agents on site." DE 170:33.

A fourth factor indicating that Gosney was seized for purposes of the Fourth Amendment was the "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, U.S. 544 at 554. Gosney was repeatedly instructed by the federal agents executing a search warrant as to where to walk and as to what information Gosney was required to provide. Gosney was not—and did not feel—free to disregard the agents' directives at any point during his encounter with law enforcement.

7

In sum, the agents' conduct would have "communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988). Gosney was not free to "go about his business," and was seized for purposes of the Fourth Amendment.

## II. GOSNEY'S STATEMENTS AND LAPTOP MUST BE SUPPRESSED AS FRUITS OF THE UNLAWFUL DETENTION

Any and all statements made by Gosney regarding ownership and passwords of the computers inside the DMC Office must be suppressed as fruits of the unlawful detention. Likewise, and for the same reasoning, the laptop seized during the search of Gosney's closed backpack during his unlawful detention must be suppressed as well. This evidence must be suppressed as "a fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471 (1963). "As subsequent cases have confirmed, the exclusionary sanction applies to any "fruits" of a constitutional violation— whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S. 463 (1980).

## III. THE SEARCH OF GOSNEY'S BACKPACK WAS NOT AUTHORIZED BY THE SEARCH WARRANT FOR THE DMC OFFICE

Gosney was not on the Premises at the time that agents detained him and searched his backpack. Thus, any search of his backpack cannot be valid pursuant

to the search warrant for the DMC Office. The Fourth Amendment requires that the scope of every search pursuant to a valid warrant be strictly limited by the authorization of such warrant. *Walter v. United States*, 447 U.S. 649, 657 (1980). "[T]he Fourth Amendment confines an officer executing a search warrant *strictly within the bounds set by the warrant[.]*" *Bivens v. Six Unknown Agents*, 403 U.S. 388, 394 n.7 (1980) (emphasis added). When a search is conducted outside the scope of the terms of authorization listed in the warrant, it drains the significance of all meaning of both the particularity requirement and probable cause requirement of the Fourth Amendment. *United States v. Heldt*, 668 F.2d 1238, 1257 (D.C. Cir. 1981). It is widely recognized that the scope of a premises search warrant is limited to the terms of the warrant and cannot be used to search anything beyond such spaces. *Id.* at 1262.

The search warrant listed the location to be searched as Suite 417 with a sign reading "DMC Group Holding, LLC," located "to the left from the elevators near the women's restroom." Search Warrant, Attachment A. Agents searched Gosney's closed backpack while he remained detained in the elevator of the building.

**WHEREFORE**, Defendant John Paul Gosney, Jr. requests that this Court set an evidentiary hearing on this motion and ultimately enter an order suppressing the evidence seized as a result of the unlawful seizure of Gosney's person, unlawful

search of Gosney's backpack and subsequently unlawful search and seizure of Gosney's personal laptop and provide such other and further relief as is just and fair.

Undersigned counsel attempted to confer with the Government prior to filing this motion but was unable to reach him. Once the Government notifies the undersigned of its position, the undersigned will notify the Court.

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

/s/ *Alyssa Silvaggi*
**ALYSSA SILVAGGI, ESQ.**
Florida Bar No. 114129
E-mail: ASilvaggi@RoyBlack.com
